English et al. *v.* Robinson Township School District et al.

Argued November 10, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused December 5, 1947.

*W. Denning Stewart,* with him *John Evans Rose, Harold R. Schmidt, Roy Thomas Clark, O. K. Price* and *Rose, Eichenauer, Stewart & Rose,* for plaintiffs.

*Robert Van der Voort,* with him *Joseph R. Royston, John A. Robb, Karl D. Enzian* and *Rahauser, Van der Voort, Royston & Robb,* for defendants.

*Harry F. Stambaugh,* with him *T. McKeen Chidsey,* Attorney General, and *David Fuss,* Deputy Attorney General, for Commonwealth, intervening defendant.

*William A. Schnader,* with him *Matthew A. Crawford, Rabe F. Marsh, Jr., Frank G. Smith, John H. Fertig, J. Hayden Oliver, Smith & Maine* and *Schnader, Kenworthey, Segal & Lewis,* for intervening parties plaintiff.

*John C. Bane, Jr.,* with him *Edwin P. Griffiths* and *Reed, Smith, Shaw & McClay,* for H. C. Frick Coke Co., amicus curiæ.

*O. K. Price, Roy Thomas Clark* and *Rose, Eichenauer, Stewart & Rose,* for Republic Steel Corporation, amicus curiæ.

*Samuel Krimsly,* with him *Jesse P. Long, Joseph M. Loughran, Anne X. Alpern,* City Solicitor, *Anthony Cavalcante* and *James Hall Prothero,* for United Mine Workers of America, amicus curiæ.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 26, 1947:

Plaintiffs, three individuals, filed this bill to restrain the respondent school district of Robinson Township, from levying a tax on "coal mined by the open pit method commonly called the stripping method . . ." within the boundaries of the township. We were informed at the argument that such coal is not otherwise taxed locally or by the Commonwealth. Plaintiffs are lessees of coal lands producing coal by the stripping method in the township. The defendants who were elected school directors, acting on behalf of the school district of Robinson Township, by resolution, imposed the tax on coal produced between August 27, 1947 and July 1, 1948. They did so pursuant to Act No. 481, passed at the last session of the legislature and approved by the Governor June 25, 1947, P. L. 1145.

At the outset, this Court is not concerned with the wisdom, need, or appropriateness of this legislation. Courts do not pass upon legislative wisdom but upon legislative power. *Baldwin Township's Annexation,* 305 Pa. 490, 496, 158 A. 272 (MAXEY, J.) ; *Olsen, Secretary of Labor of Nebraska, v. Nebraska ex rel. Western Reference & Bond Association, Inc., et al.,* 313 U. S. 236, 246 (DOUGLAS, J.).

Section 1 of the Act contains the following provision: "The duly constituted authorities of cities of the second class, cities of the second class A, cities of the third class, boroughs, towns, townships of the first class,

school districts of the second class, school districts of the third class and school districts of the fourth class shall have the authority, by ordinance or resolution, for general revenue purposes, to levy, assess and collect or provide for the levying, assessment and collection of such taxes on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivision, as it shall determine, except that such local authorities shall not have authority by virtue of this act to levy, assess and collect or provide for the levying, assessment and collection of any tax on a privilege, transaction, subject, occupation or personal property which is now or does hereafter become subject to a state tax or license fee; nor have authority to levy, assess or collect a tax on the gross receipts from utility service of any person or company whose rates and services are fixed and regulated by the Pennsylvania Public Utility Commission; nor have authority, except on sales of admission to places of amusement or on sales or other transfers of title or possession of property, to levy, assess or collect a tax on the privilege of employing such tangible property as is now or does hereafter become subject to a state tax."

The bill alleges the statute is repugnant to the constitution of Pennsylvania, alleging violations of Article I, sections 1 and 9; Article II, section 1; Article III, sections 3 and 7; Article IX, section 1, and section 1 of the Fourteenth Amendment of the Federal Constitution. These allegations may be summarized by saying that the title of the Act is inadequate and that the bill contains more than one subject; that there has been unlawful delegation of power; that taxation pursuant to the Act takes property without due process and also violates the uniformity requirement.

A number of parties were permitted to intervene at the argument, among them the City of Pittsburgh, a city of the second class, and a number of coal companies

engaged in business in other municipal subdivisions of the state. The Attorney General appeared on behalf of the Commonwealth.

The statute in its presently important aspects resembles the Act of August 5, 1932, P. L. 45, commonly called the Sterling Act, authorizing the City of Philadelphia, as a city of the first class, to levy taxes. The Sterling Act and municipal action pursuant to it were sustained in *Blauner's Inc., et al. v. Philadelphia et al.,* 330 Pa. 342, 198 A. 889. The opinion in that case, written by Mr. Justice DREW, finally disposes, adversely to plaintiffs' contention, of the objections made to Act No. 481 so far as the objections would relate to authority conferred on cities of the second class, cities of the second class A, and cities of the third class. The opinion stated: "It is admitted that the Legislature has the right and power to delegate to the City Council the authority by ordinance to levy, assess and collect taxes for general revenue purposes. Such a delegation of the taxing power is expressly sanctioned by Section 1 of Article XV of the Constitution of Pennsylvania, which provides in part that 'Cities . . . may be given the right and power . . . to exercise the powers and authority of local self-government, subject, however, to such restrictions, limitations and regulations, as may be imposed by the Legislature.' This Court has ruled that the legislative taxing power may be lawfully delegated to an elective City Council. A most recent case in point is that of Wilson v. Philadelphia School District, 328 Pa. 225, in which Mr. Chief Justice KEPHART reviewed the subject elaborately." See also *Philadelphia v. Samuels,* 338 Pa. 321, 12 A. 2d 79. There remains for consideration, therefore, only the effect of the Act as to the other subdivisions of government affected by it.

The issue now before us is of course limited to the power of the defendant school district and the resolution complained of. No facts are in dispute. The petition of

the plaintiffs, pursuant to which we took the original jurisdiction, avers that "no material issues of fact will be raised, but the pleadings will raise exclusively issues of law. . . ." There seems to be some misapprehension on the part of some of the intervenors as to the scope of our inquiry. Generally, the form of the prayer of their petitions was "to intervene in the above proceeding and to appear and be heard by counsel and submit a printed brief and make oral argument at the hearing of said Bill of Complaint." The orders are substantially in the form that petitioner "is permitted to intervene in the above proceeding and to appear and be heard by counsel and submit a printed brief and make oral argument. . . ." But in a brief filed on behalf of intervenors it is argued that the ordinances described in the "petitions for leave to intervene violate the uniformity clause of Article IX, section 1." The orders granting leave to intervene for the purposes specified do not go so far as to put in issue in this case the validity of ordinances passed by political subdivisions other than the school district of Robinson Township, challenged by the plaintiffs. We cannot adjudicate the merits of other ordinances in the absence of the political subdivisions that passed them.

The complaint that the subject of the legislation is not clearly expressed in the title of the Act and that there are two subjects, in the prohibited sense, are so destitute of substance as not to merit discussion; it is an act authorizing political subdivisions of the state to levy and collect taxes. Compare *Bennett v. Hunt,* 148 Pa. 257, 260, 23 A. 1121; *Mallinger v. Pittsburgh,* 316 Pa. 257, 261, 175 A. 525; *Hadley's Case,* 336 Pa. 100, 107, 6 A. 2d 874. The title is "An Act empowering cities of the second class, cities of the second class A, cities of the third class, boroughs, towns, townships of the first class, school districts of the second class, school districts of the third class and school districts of the fourth class to levy, assess, and collect or to provide for the levying, assessment and collection of certain

additional taxes subject to maximum limitations for general revenue purposes; authorizing the establishment of bureaus and the appointment and compensation of officers and employes to assess and collect such taxes; and permitting penalties to be imposed and enforced; providing an appeal from the ordinance or resolution levying such taxes to the Court of Quarter Sessions and to the Supreme Court and Superior Court." We must reject the objections complaining of what the plaintiffs call the delegation of power to the school district. Defendant school district's power is not unlimited. Section 1 contains the following provision: "The aggregate amount of taxes annually imposed by enactment of an ordinance or resolution by any political subdivision under this section shall not exceed an amount equal to the product obtained by multiplying the total assessed valuation of real estate in such political subdivision at the time of the said enactment by the maximum millage tax thereon allowed by law." Section 32 of the Statutory Construction Act provides that the singular may include the plural: 1937, P. L. 1019. It is really not so much a delegation of power to school districts as a direct assertion of the State's power to tax enforced by the State's agents: *Minsinger v. Rau,* 236 Pa. 327, 84 A. 902. The statute makes school districts bodies corporate: 24 PS, section 30; *Commonwealth v. Pittsburgh School District,* 343 Pa. 394, 23 A. 2d 496. The Constitution in Article X, section 1, provides: "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public schools, wherein all the children of this Commonwealth above the age of six years may be educated, and shall appropriate at least one million dollars each year for that purpose." In *Minsinger v. Rau,* supra, we dealt with the school district as "an agency of the Commonwealth." See also *Duff et al. v. Perry Township School District,* 281 Pa. 87, 126 A. 202. The power to delegate to the elected school board as an agency of the Commonwealth the

52

duty of levying taxes in order to comply with Article X, section 1, is not now open to question. It is sufficient to refer to what was said in *Wilson et ux. v. Philadelphia School District et al.*, 328 Pa. 225, 195 A. 90. At p. 232 we said, "It is no doubt true in this state that the legislature has conferred upon school districts the power to levy and collect taxes for school purposes, and this has been upheld without reference to any definite restrictions placed thereon: Blair v. Boggs Twp. School Dist., 31 Pa. 274; Wharton v. School Directors, supra; Mellor v. City of Pittsburgh, 201 Pa. 397; Duff v. Perry Twp. School Dist., supra. Laws have been enacted for school districts to levy taxes for purposes other than public education: Weister v. Hade, 52 Pa. 474; Keasy v. Bricker, 60 Pa. 9; West Donegal Township v. Oldweiler, 55 Pa. 257. In none of these instances was the constitutional question of improper delegation of the taxing power raised; moreover, in all of them the directors of the school districts involved were elected by the people and it is now too late to question the power of elective school boards to levy a tax. The first case that considered the question of delegation of taxing power was that of Minsinger v. Rau, supra. Prior to this decision, it had been taken for granted that the legislature could empower the school district to levy taxes for educational purposes." See also *Commonwealth of Pennsylvania, State Employes' Retirement System v. Dauphin County*, 335 Pa. 177, 179, 6 A. 2d 870.

We find no support for the objection that the statute is repugnant to the requirement that all taxes shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax and shall be levied and collected under general laws. The statute undoubtedly is general, effective, as it is, throughout the state excepting in cities of the first class, an exception permitted by the classification provision of the Constitution: Article III, section 34. The school district's resolution now before us is general in its pro-

visions and is effective throughout the territorial limits of the school district. The mere fact, if it be a fact, that the plaintiffs are at the present time the only parties engaged in the business in question does not make the resolution less general; if a second miner started in the same business tomorrow his product would immediately be subject to the tax. It was suggested in the oral argument that if the tax in this school district were sustained and if coal produced in the same way in another taxing district in the state were not subjected to the same tax there would be a lack of uniformity repugnant to the constitutional requirement. There is nothing in the record to support that argument because the requirement is that taxes in the same taxing district shall be uniform on the same class of subjects, not that the taxing districts of the state must get together and agree upon the same tax for their respective districts. Compare *Moore v. Pittsburgh School District*, 338 Pa. 466, 13 A. 2d 29, in which we said, pp. 472-3, "The Constitution does not say that taxes shall be uniform as to classes of municipal divisions of the State, but uniform territorially as the State is divided territorially into cities, counties, townships and school districts. . . . We all know as a matter of fact that taxes are not uniform in the different school districts comprising a class and never have been. They are bound to be different because of varying local conditions. Under Minsinger v. Rau, there could have been a different tax in Philadelphia from that in Pittsburgh, the one could have been the maximum impost of six mills and the other the minimum of five." See also *Sugar Notch Borough,* 192 Pa. 349, 357, 43 A. 985; *Clouser v. Reading,* 270 Pa. 92, 113 A. 188.

For the same reason the statute cannot be held repugnant to the prohibition against local or special legislation. Under Article III, section 34, adopted in 1923, school districts have been classified. The school boards

of districts of the same class may tax at different rates without infringing the provision against local or special legislation: *Moore v. Pittsburgh School District*, 338 Pa. 466, 13 A. 2d 29. This is further illustrated by decisions under the Act of 1874, P. L. 230, as amended by the Act of May 23, 1889, P. L. 277, classifying cities. In *Clouser v. Reading City*, 270 Pa. 92, 95, 113 A. 188, we said: "The ordinance in question treats all the grocers in Reading alike, and the fact that other grocers, in other municipal divisions of the State, may be taxed differently, or not at all, makes no difference in legislating for the class of cities to which Reading belongs. The argument that the act in question is local, because some cities of the named class may tax grocers, while others of the class may not, was met and disposed of in Jermyn v. Scranton, 186 Pa. 595, wherein it was said, answering a like contention there made, 'But this difference is not radical or fundamental to the existence of the power, it relates only to the difference in the existing conditions in the different cities.' The same argument could be made against the levy of general taxation if the rates differed in the different cities as they do." See also *Allentown v. Gross*, 132 Pa. 319, 19 A. 269; *Williamsport v. Wenner*, 172 Pa. 173, 33 A. 544.

It is also said that the Act is invalid because the authority to tax is "for general revenue purposes." In one brief it is contended that conferring on school districts "the power to raise money 'for general revenue purposes' imports that they shall have the right to determine for what purposes other than school purposes the revenue is to be raised." The act means nothing of the kind. School districts may tax only for school purposes within the constitutional sense and the words "for general revenue purposes" mean the general revenue purposes *so permitted by law*. It must be remembered that statutes are presumptively constitutional and that courts must interpret them in that sense if possible; there is no difficulty in this case. Section 52, Statutory Con-

struction Act 1937, P. L. 1019; *Commonwealth v. Schuylkill Trust Company*, 327 Pa. 127, 134, 193 A. 638.

We must also reject the suggestion based on Article I, sections 1 and 9, and on section 1 of the 14th Amendment, that plaintiffs' property is taken withoue due process. There is no doubt of the state's right to tax, and, as the cases cited show, there is no doubt of the state's right to confer on the school district, as its agent, the power to levy and collect the tax. The courts are open to the taxable to challenge the tax, as the plaintiffs are doing in this suit. The fact that the right of appeal against the resolution or ordinance before the date at which it becomes effective provided for in section 3 of the statute is limited is immaterial; due process does not require such a privilege; indeed, if there were any basis for the argument of unconstitutionality based on this provision of the statute the result would be merely to strike it out of the act pursuant to the severability provision contained in Section 8. Due process is not wanting in this case because it has long been settled in this Commonwealth that a plaintiff may go into equity to restrain attempted taxation for want of power to tax: *Dougherty, Trustee, v. Philadelphia et al.*, 314 Pa. 298, 301, 171 A. 583. In such circumstances there is no want of due process.

The bill is dismissed; costs to be paid by plaintiffs.